Good afternoon, Your Honors. May it please the Court. My name is Helen Erza of Morrison and Forster, and I'm here today representing Christine Maydation. Ms. Maydation is a law-abiding person who has resided in the United States for ten years. She's been married to a U.S. citizen for seven years and is the mother of two U.S. citizen children, Stella and Andre. She fled Armenia ten years ago. Ms. Maydation filed for asylum as soon as she came to this country. Unfortunately, she did not do a very good job representing herself, and her attorney did not do a great job representing her. He missed the deadline to petition for review in this Court by three days. This Court should not allow Ms. Maydation to be deported and separated from her husband and young children based on this unfortunate mistake, and it doesn't have to. The government has made serious mistakes in handling Ms. Maydation's case as well, and this brings up the key issue in this case, which is jurisdiction. The government mailed a copy of the decision to Ms. Maydation's sister, but not to her. Initially, in analyzing the issues in this case, I looked at this as the 90-day limitations period for filing a motion to reopen as having never been started. But under Miller, which is the case referenced in the reply brief that we submitted last week, the Court also lacks jurisdiction, in essence, to entertain this appeal. Accordingly, it's our position that the Court should, although initially we asked the Court to reverse, and that would obviously be fine, in addition, under the jurisdictional analysis, the Court also has the option, or I would say is actually required, to make a finding that the underlying case is actually open and go ahead and dismiss this appeal for lack of jurisdiction. This ultimately would basically solve Ms. Maydation's problems, as her voluntary departure time in that event also would not have begun to run. How is the underlying case still open? How is it still open? Because the BIA decision was never actually legitimately served on Ms. Maydation. It was mailed to her sister, but it was never mailed to her. She's an individual, and she's entitled to individual service. Well, it was mailed to her sister, but were all the names on the letter? No, they weren't. If you look at 93 in the record, it shows that it was mailed just to her sister. In fact, I would say that's the key document in the case. It shows that the decision was mailed to her sister. And if you think about it, if you had a husband and wife applying for political asylum, you wouldn't just serve the husband, even though they live at the same address. They're individuals, and they're entitled to individual service. Well, it often happens that the designated representative gets served. It's an odd case in this one, because it's a consolidated case, and they serve the lead petitioner. But what's your best case that says that's insufficient? The best case would be the Martina Serrano case. And in this case, it's particularly important, because basically, as you can see from the record, for whatever reason, when it was mailed to the address, neither Ms. Maytation nor her sister was aware of the decision, for whatever reason. And Ms. Maytation went to a lawyer, and when she went to a lawyer, she got the decision faxed to her. Upon receiving the decision faxed to her, she literally had two days to leave the country under the scenario, under the facts that are occurring here. And additionally, she instructed her counsel to file an appeal, and then her counsel filed the appeal late. So even if, even though she only had two days to leave the country, she actually, you know, went to see a lawyer and instructed the lawyer to file a petition for review, which should have stayed her time to stay in the States, you know, under that, because the petition for review would have been pending. Right. Getting back to where we started on this, what you ask us to do is to declare that she wasn't properly served, and therefore, the motion to reopen is still pending, right? Not the motion to reopen, but the case. The underlying case. Right. The underlying case is still open, so she could still file a motion to reopen, if I'm being more precise. Exactly. So the motion to reopen would be... But she found out within the statutory period. That's correct. So why isn't any error harmless? Well, that's where I'm not asking for the court to look at this from an equitable tolling standpoint, where whether she was aware of it, or whether she, you know, found out about it, or whether she didn't show enough diligence in following up afterwards. I'm asking the court to find that the BIA is required, and under its own regulations, to serve each person with a copy of this decision. It's especially important here, because the decision doesn't just cut off her right to appeal if she misses the deadline, but being aware that that decision was entered into the court's docket, actually stops her time running to go back to Armenia. You know, and here, as you can see, when she finally found out about the decision, she literally had two days to do something about it. She did something about it, and her attorney obviously blew it, basically, and didn't file the petition for review. So I think the best example would just be a husband and wife living at the same address. I mean, under any other circumstances, for serving a complaint, service visit, anything. In fact, I think it's common practice for the INS, or former INS, to do just that, to serve, not serve them individually. So whether that's right or wrong, that's the way they do it. Now, this is an unusual circumstance, because you don't have a husband and wife situation. You have a lead petitioner, but the lead petitioner was identified as a lead petitioner by the service, not by the petitioners, as I understand it. So it might be slightly different. But the fact is, getting back to my question, would you basically claim it's structural error if you don't serve them? Then the decision's not effective, even though they did get service via a third source. Well, that's correct, and that's exactly what happens when they send it to the wrong address. I mean, you can also imagine many scenarios where they put the wrong name of the person, but they just send it to the right address. But then they try to say, no harm, no foul, because the petition, the correct petition was in there, or the correct decision was in there, and you should have known that your time started ticking. And actually, if you look at this case, the question is, when did her time fairly start to tick in this case? I mean, for whatever reason, she didn't get this decision from her sister. I mean, I don't think her sister withheld it from her, but of course... Would you like me to approach, or do you have it on the record? It's at CA-93. Read it. What does it say? What it says is, it's on U.S. Department of Justice letterhead, and it says up at the right-hand corner, Guyenne Maydation, 203 West Maple Apartment, 203, and the rest of the address. And then it has information about the case in a kind of an array line. And then it says, enclosed is a copy of the board's decision in the above-reference case. And the letter itself is just, is addressed to whom? It's addressed to Guyenne. It has no dear anyone on it. It just has a, what do you want to call it? The, you know how customarily on a letter, you put the address that's on the envelope inside on the letter. So basically, this shows that the envelope was addressed to Guyenne. What is... That's the older sister. That's the older sister, correct. There's nothing there, there's no name of the younger sister, or the nephew. Correct. Correct. And what took the eight months to file a reply brief? Oh, we put the, I'm sorry, Your Honor, we put the case into mediation. There's a, I'm a pro bono appointed counsel, and there's a mediation program. We put it into mediation, and then after mediation was over, the reply brief was supposed to be reset. So it was never, it wasn't reset. And I think when I received notice of oral argument, it had only been maybe two months since the mediation closed. So I was just waiting for the reply brief to be reset. Reset by whom? By the mediation program coordinator for the pro bono program. Well, you know, the government, we sent out an order to you, didn't we? We asked you to, didn't we ask you to brief a certain issue? No. Basically, you're, basically, the government submitted an administrative... of her appeal. That's correct. The original record that I received did not have some information about some proceedings that occurred during the original asylum petition proceedings. And the government brought that up in its opposition brief. And then the court asked the government to submit those documents. And those documents do show that Ms. Mediation received, she received a copy of the decision, but they do not show that the government served it on her properly. They show, basically, that she went to an attorney who looked it up on the court's docket and got an administrator to send a copy to him. And as I mentioned earlier, you know, she, that was two days before she was supposed to have voluntarily departed, if you use the original issue date. Okay. Now, it was September the 5th of 1995 that your client's application for asylum and withholding was denied. And she was granted voluntary departure. Correct. That was the original decision. All right. And then, and then the, on May the 23rd of 1997, the BIA dismissed her appeal. That's correct. And then she filed a petition for review with this court. That was three days late. That's correct. And then, then this court, September the 25th, 1997, granted the government's motion to dismiss your client's petition because the, her petition, because her motion, what, to reopen was untimely? No, no, no. They dismissed it for lack of jurisdiction because her attorney was late, filed the petition for review late. Three days late. Correct. So it got dismissed for lack of jurisdiction. And is that when you came into this case? No. In May 26, 1998? No. The rest of the chronology, because it is broken up because of the additional documents that came in late through the government. The rest of the chronology is that then she hired another attorney who filed another motion to try to continue the proceedings, which was rejected, and then she filed after the five-year bar passed for adjustment of status. Then she hired another attorney who filed a motion to reopen to try to adjust her status. That motion to reopen was denied, and that is where we're on appeal from here. Is the reason that she was a, that her case was consolidated with her sister is that she was a minor at the time? No, it's not, Your Honor. He says Christine is now 18 years of age. Is that inaccurate? 1995 decision? Where are you reading from, Your Honor? I'm reading from the original IJ decision, September 5, 1995. But what number in the record is it? It would be 120, 119-120. Usually you don't have a lead petitioner unless you have some, unless either the service is consolidated for family reasons or not. And it would be unusual to have two sisters having separate, or a consolidated petition unless one of them was a minor at the time. And the IJ finds Christine who's now 18, which suggests to me that at the time of the filing she was not an adult. Is that true? That's right, Your Honor. I didn't know exactly what page you were looking at. And that's actually in our opening brief, is that she was 18 at the time. And I cite to that page and 148 as well, that she was 18 at the time. So what's wrong with adjudicating her petition once her sister's been designated as a lead petitioner? As if service should go to the lead petitioner only, if it were properly... Basically what your argument has to be then is that once she attained the age of majority, they should have served her separately even though there was no documentation of that in the service file, right? But wasn't she 18 during the deportation proceedings? Because I believe that's what page 120 indicates. Right. By the time it finally got to an IJ, but it must have been commenced earlier than that. Maybe the government can clear that up for us. Well, here on page 148, they ask her at the actual proceeding, How old are you, Christine? And she says 18. Right. But I mean, the proceeding was initiated that day. It was initiated long before that, right? Well, July 19, 1995. It was initiated, I think, in January of 1995. And additionally, the record indicates that she filed a separate appeal from her sister. The one appeal was... To the BIA, you mean? Pardon me, Your Honor? To our court or the BIA? To the BIA. So what's your best argument again? Say it slowly. Best argument, Your Honor, is that she's 18 when she, you know, she was 18 when she appealed to the BIA at least. I think it indicates in the record that she was 18 during the original proceedings as well. But in any event, she was 18. She was an adult, and she was entitled to individual service. But she was 18 when an appeal was taken to the BIA. And that appeal was taken by her... What was the lawyer's name then? The lawyer who took that appeal? Yeah. No, she was in Proprier at that time. She was in Proprier. Correct. She wrote her own letter to the BIA appealing the underlying decision. Well, she had a lawyer before the IJ, didn't she? No, she did not. She didn't. She didn't. She represented herself before the IJ. Okay. And then when she went to get a lawyer, the lawyer filed an appeal too late. That was the appeal that was filed on the 26th of June, 1997. Correct. I mean, ultimately, the issue is... Okay, so... Where does that get you? Where does that get me? The appeal? Well, okay, you asked for the best argument. The best argument is basically that she's entitled to individual service. I mean, she's an individual, and the regulations say that a party, if unrepresentative, must be served. She wasn't, you know, along with her sister. She hadn't, along with her sister, hired a lawyer, in which case, you know, service to the lawyer on behalf of both of them would have been correct. I mean, there's... I mean, I have no reason to believe that her sister withheld the opinion from her, but, you know, she's entitled to individual service. I mean, people... These decisions take years to come down. You know, if she moved from her sister's, you know, from sharing a residence with her sister... She's entitled to individualized service of the BIA's dismissal of her appeal? Correct. All right, and... So what she wants now is to be able to ask the BIA to reconsider? Ask the BIA to reserve her decision, to serve its decision, and then start the proceedings. One second to restart the clock, and it wipes out all the ineffective assistance. That's correct. It wipes out the ineffective assistance. It wipes out the BIA's decision, and it's fair. It's especially fair in this case because the BIA's decision doesn't just affect whether someone has a right to appellate review, which is an important right, but, I mean, we all know it's not the same, and the notice procedures aren't the same as, you know, your initial hearing, underlying hearing. But, in any event, that decision... It wipes out the BIA's decision. Then where does that get you? Well, then she didn't have to depart. I mean, then her time for departing hasn't started yet, and she can apply for adjustment of status. And she's married now to a citizen. That's correct, with two children. And the bottom line is that the BIA's decision is different in many ways than, you know, other decisions, say, in bankruptcy court or even district court decision, in the sense that that decision is basically an order to someone to leave the country. They need the 30 days. I understand that, but, in fact, we do allow service on lead petitioners if they have a derivative petition. So my question is, was this a derivative petition to begin with when she was a minor? Certainly, the nephew's petition was derivative. That's clear. I don't know. I can't find anything in the record that illuminates that for me. Perhaps the government can help us. Perhaps what, Your Honor? The government can help us when they get up. Okay. What's her sister's status? I'm not sure, Your Honor. Like I said, I'm appointed pro bono counsel. I'm not representing the family. I'm not curious. I'm not curious. I know her brother's status because her brother's status was submitted, you know, by the – it shows in the record that her brother actually received asylum. I believe that's correct. I'm not ordinarily an immigration attorney. So from what it looked like to me, the documents that were submitted indicate that he actually got asylum. All right. Thank you. Sure. May it please the Court, William Minnick representing the Respondent. The Board did not abuse its discretion in denying Petitioner's untimely motion to reopen. Petitioner failed to exhaust her claim of improper service by raising it to the Board, and this Court lacks jurisdiction to consider that claim. But in any event, the Board's 1997 decision was properly served on Petitioner by mailing a copy to the lead respondent at the correct address. Was her application derivative or not? Do you know? It was not derivative. So how did she become a – how did she acquiesce into – I mean, you can't just say, we're going to designate so-and-so for service if they're not a derivative applicant. I think here's what happened, Your Honor. They got three different orders to show cause and notice of a hearing to show up at the same hearing date at the same time. So they showed up before the IJ together as a group. And then at that point, because they were making the same claim, they got placed into joint hearings. The evidence was going to be the same for all three of them, so they got placed in joint proceedings. When it came time for the merits decision in front of – the merits hearing in front of the immigration judge, the older sister was the only one who testified. So why does that deprive her sister of notice? Well, her – Or the right to receive notice of the decision. And we would say that she did receive notice of the decision, but the reason it stayed – the reason that – No, you didn't mail it to her. You didn't mail it. The sister did not – our petitioner here today did not receive notice directly from the service. Your claim has to be that that service on the sister was sufficient, right? Well – Or am I missing something? Our claim is that one copy sent to the three of them was sufficient. Why – how can you – when it's not a derivative petition, how can that comport with due process? Well, she – the sister – Well, and that was before the immigration judge. When they got to the Board of Immigration Appeals, they filed one single joint notice of appeal form, which is the EOR Form 26. They filed one form. In other words, they could have filed separate appeals, but for whatever reason they chose not to, they filed one notice of appeal. She claims otherwise today. Today she said that her client filed a separate appeal. I remember reading that in her reply brief, but I couldn't find a separate appeal. Does the record show what the appeal was? The notice of appeal was? Do you have a record site for us so we can check on it? I do, Your Honor. It's administrative record at 107. That's the Form 26 notice of appeal that perfects an appeal to the Board, and the three of them filed one joint piece of paper. So they all signed it. Is that correct? That's not correct, Your Honor. There's one signature. I'm going to assume that that's the signature of the sister, Gay-Ann, although I can't be sure of that. There is one signature, but what I would invite... What were the names I mentioned? Well, that's not correct either, Your Honor. The names of the sister and her son are typewritten in the appeal aliens block, and then the petitioner's file number is written on the appeal form. Written there. You know, I looked at your brief, and you focused a good deal on the claim was the same address, but then I read the reply brief, which seemed to me to focus very clearly on the INS regulation that service had to be on each person. And the argument, I think she's correct, the best argument for her is you didn't serve it on this particular person. How do you meet that argument? Your Honor, what the regulations say is that each alien has to be served, but it doesn't specify the manner of service for each alien in joint deportation hearings. No, but it does say each person is to be served. That is specifying it. I'm sorry, the deportation hearings weren't joint. It was the appeal that was consolidated. Well, here's the other problem I have, and I didn't mean to interrupt Judge Noonan, but I wanted to get to it quickly, and that is that the letter sent to her sister lists only her sister. I mean, it doesn't list the other three applicants. It encloses the decision. That's true. But it is only to her. The petitioner's file number is on the cover letter, Your Honor. Well, she's explained it a little bit. I mean, it seems to me, let me put it to you very bluntly, technically you lose. Then if we look at the merits, we have a United States citizen to whom she's married, with two United States citizen children, I assume, and you want to break the family up. Now, what sense does that make as a matter of general policy? In other words, I don't see why should you get an absurd claim. Let's get this person married to a citizen, this mother of a citizen, out of the country. Why shouldn't we just apply the technical law and say you lose? Well, Your Honor, the issue before this Court is whether the Board's order was in accord with law, and the Board's order denying the motion of open wasn't in accord with law. That's why you didn't serve an honor, you lose. Unless you can claim some equity, you're going to lose. Well, Your Honor, what we would rely on is the fact that her file number appears on the cover letter. What does that mean? That doesn't serve an honor. You're supposed to memorize her file number. Your Honor, I would invite the Court's attention to Administrative Record 109. This is a letter from the petitioner, Christine Matterton, that she filed to the Board of Immigration Appeals. It's signed by her. It was authored by her. She signs it at the bottom. And in writing the Board of Immigration Appeals, the file number she references at the top is her sister's name and her sister's file number. In other words, the petitioner, in writing to the Board, this is how she considered the name and the file number of her case. Was her name on the service of the Board's decision? Her first name is not on the cover letter. Her name is not. Her last name and the case file number are. You can answer that yes or no. Her name was not on it. That's correct, Your Honor. The first name and the last name. That's correct, Your Honor. Their name was not on it. That's correct, Your Honor. The service was not made. Did you handle the mediation? Yes, sir. And you stuck to your guns and wanted to come here. Well, Your Honor, I mean, the government has no objection to placing the case back in mediation. But you don't show any flexibility, even if you've got a losing case. Well, we're willing to try again, Your Honor. Well, the difficulty that we face in many of these cases is when there's a facially legitimate petition for adjustment status pending at the same time as an order for removal, which will effectively negate any chance that someone has for a legitimate adjustment status. And that's why we often put these cases in mediation, because often the left hand doesn't know what the right hand is doing in the government. And things proceed on one track. And what we like to do is to get them all wrapped up in one package. That's why we send them to mediation. And that's why we instructed our staff, when there's a legitimate, facial legitimate, application for adjustment status, we want to hear about it for the first time in oral argument. And that's why we send them to mediation. Now, if the government is just saying, well, we've got a winning case and we don't care to mediate, even though there's understood from years ago that the position of the Attorney General was not to separate families if it's a legitimate situation. I guess we're wasting our time in sending it to mediation. Well, we have no objection to the court sending it back to mediation. Well, what would you do if you were Christine's lawyer and an expert in immigration law? What would you do to save her and keep her here with her two American citizen children and her husband? What would you suggest? I think what she... He has to leave. He has to be out of the country for how many years? Ten? I'm not sure that statute applies to this petition because she was placed in deportation proceedings before I rear her past, so I'm not actually sure that that ten-year bar would apply to her. What was it, five? Oh, the five-year bar on adjustment of status? Yeah. Well, that's passed. It was five years from her scheduled departure date. Right? That's correct, Your Honor. So that's gone. Now, if she's deported from the country, how long will it take for her to get back here? Again, ten years could be less, but it could be ten years. Someone might argue that the ten-year bar applies. So by that time, she's pretty old. Yes, sir, and it wasn't briefed in the government's brief, but our initial inclination is the ten-year statute that she refers to, which I think is 212A9A2, would not apply to her because she was in deportation proceedings. So she doesn't have the fact that she's inadmissible for ten years for failure to voluntarily depart. So is this a transitional rules case, or is it even a pre-? Well, it would have been a transitional rules case under the old law before Real ID. Of course, on Real ID, it's jurisdictionally treated as a permanent rules case, but because she was in deportation proceedings, some of the IRERA statutes don't apply to the merits of her case, and I think that 212A9 is one of those that doesn't apply to her because she's in deportation proceedings. So what are you going to do if it goes back to mediation? What's going to be your recommendation? Well, I would invite Petitioner's Counsel to directly contact the district director and see if he would be inclined to exercise his discretion in her favor. So the adjustment of status? You mean as to the adjustment of status? Yes, sir. He has the power to do that. He has the power to join in a motion to reopen at the board, which I believe there's no time limit on a joint motion to reopen. He can do that. Yeah, and basically what you're saying is you might be willing to waive the agency's objection to the motion to reopen if the district director were willing to recommend adjustments. And again, Your Honor, I haven't talked to him. I can't promise the court how he would choose to do that, but at this point we haven't asked him. Why don't you call him right now? We'll give you a phone. We're all working for the same government. So we can let you use that phone, no charge. Why don't we do that, and then you can just get ahold of him and tell him you're here. I appreciate the court's invitation. I would ask on his behalf for more time to review the facts of the case. I think he probably would be more likely to exercise his discretion in the petitioner's favor if he had more time to review the case. Well, he's not going to review it, is he? Is he going to sit down with a big file? He'll review whatever the petitioner's counsel forwards to him, Your Honor. I gather that he wasn't contacted before the mediation. That's correct, Your Honor. So was he contacted? I didn't hear that. He was not contacted. Oh, he was not contacted. So what was your recommendation? Again, I did not speak to the district director. I mean, what would your recommendation be to the district director? I don't know, Your Honor. I don't think he has complete discretion to ---- He doesn't listen to you? Your Honor, for what it's worth, I would recommend that he reopen the case. What? I would recommend he reopen the case, but, Your Honor, that's my personal recommendation. Yeah. But I'm not sure how much what my personal recommendation matters in terms of him exercising his discretion. Well, I hope you could convey, if you are going to do this, the very serious concern we all have, and the government expresses, about breaking up a family. That's not a light matter. It's a serious matter to take a mother away from her children and her husband. Is that seared into your soul? It's a very serious matter. Yes, sir. And you could convey some of that to the district director. I certainly will, Your Honor. We think there's some rather serious flaws with the way the government handled this case. I will certainly also convey that, Your Honor. All right. Is that all right with you? I appreciate you doing the mediation and coming here often. We have people who are doing two different tasks and who aren't willing to take responsibility for the entire case, and I appreciate that. Thank you, Your Honor. And we appreciate your candor and your sense of humanity. Thank you, Your Honor. Thank you. All right. Materials stand submitted.
judges: Pregerson, Noonan, Thomas